UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| CHARLES EDWARD ADAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-124-KKC |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RODNEY BALLARD, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Charles Edward Adams, Jr. ("Adams"), in custody pending the resolution of federal charges filed against him in *United States v. Charles Edward Adams*, Crim. No. 5:12-cr-112-KKC (E. D. Ky. Sept. 10, 2012), is presently being detained in the Fayette County Detention Center ("FCDC") in Lexington, Kentucky.  Proceeding *pro se*, Adams has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Rodney Ballard, Jailer, FCDC; Gary Blair, Head of Medical Department, FCDC; Rosita Rodriguez, Inmate Service Counselor, FCDC; Robert Smith, Captain, FCDC; and U.S. Marshall Service, relative to the injuries he allegedly sustained in a slip-and-fall incident at the FCDC on December 8, 2012, and the lack of medical treatment he has received for those injuries. [R. 1]  Adams appears to claim that FCDC personnel were negligent in failing to warn him of the wet floor, and he also claims that his Fifth, Eighth, and Fourteenth Amendment rights have been violated.  He seeks unspecified compensatory damages on his negligence claim and for his pain and suffering.  He also requests that his broken tooth be repaired.

The Court must conduct a preliminary review of Adams' complaint because he has been granted permission to proceed *in forma pauperis* and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous

or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Adams' complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts Adams' factual allegations as true and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

For the reasons set forth below, Adams' claims against FCDC Jailer Rodney Ballard and the U.S. Marshall Service will be dismissed, and these defendants will be dismissed from this action. Additionally, Adams' claims against the remaining government officials in their official capacities for monetary damages will be dismissed, Adams' claims for monetary damages against the remaining defendants in their individual capacities will be permitted to go forward at this juncture, and the Court will direct the remaining defendants to respond to the complaint in respect to the surviving claims.

**FACTUAL BACKGROUND**

Adams' complaint stems from an alleged slip-and-fall incident occurring at the FCDC on December 8, 2012. More particularly, Adams states, in relevant part:

> . . . I was walking in the program space of the housing unit when I slipped and fell on a slick spot on the floor and hit my mouth on a metal stool. The floor was wet and there was not a wet floor sign posted to notify that the floor was wet. Upon being injured (my right front tooth was nearly broken in half and fractured as a result of the slip and fall), the officer working the unit, Anthony Stout, was notified. The unit officer notified medical staff who informed him that I needed to fill out a sick slip. A report of the injury was filed on December 9, 2012, but I was seen by medical staff approximately a week later, only to be told by the dentist that there was nothing that could be done to fix my tooth, and that the only thing that could be done at the

> Fayette County Detention Center was to pull my tooth because the facility didn't do any cosmetic work. I filed several grievances in regards to the negligence of the unit officer and medical staff, only to be told was that there was nothing that could be done.

Complaint, R. 1, pp. 2-3.

## DISCUSSION/ANALYSIS

**A.     Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for prisoners. The statute now provides as follows:

> No action shall be brought with respect to prison conditions under 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Therefore, a prisoner must first exhaust the available administrative remedies prior to bringing a prison conditions action in a district court. 42 U.S.C. 1997e(a). Shortly after the effective date of the statute, April 26, 1996, the Sixth Circuit Court of Appeals held that the language of Section 1997e expressly requires the exhaustion of administrative remedies before bringing a civil action or appeal. *Wright v. Morris*, 111 F.3d 414 (6th Cir.1997), *cert. denied*, 552 U.S. 906 (1997). Subsequently, the United States Supreme Court has also confirmed the meaning of the statute. *Booth v. Churner*, 532 U.S. 731, 741 (2001). In *Porter v. Nussle*, 534 U.S. 516, 525 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. Furthermore, the Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81 (2006), that the PLRA requires not only exhaustion of the available administrative remedy process, but *proper* exhaustion of that administrative remedy process, which includes meeting deadlines and other critical

3

procedures. *Id*. at 93. Also, in *Woodford v. Ngo*, *supra*, the Supreme Court discussed the purposes of exhaustion as stated in its earlier opinions and stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 95.

Adams states that he filed several grievances at FCDC "in regards to the negligence of the unit officer and medical staff, only to be told was that there was nothing that could be done." [Complaint: R. 1, p. 3] Adams also states due to his indigency, he was unable to obtain copies of his grievances and appeals for purposes of submitting same with this complaint. Assuming the truthfulness of Adams' statements, the Court will assume at this juncture that he has exhausted his administrative remedies prior to filing this action. To the extent that exhaustion of administrative remedies may be an issue, that determination must be made on a more fully developed record. At this juncture, Adams's complaint will not be dismissed for failure to exhaust administrative remedies.

B.   **Named defendants**

1.   **FCDC Jailer Rodney Ballard**

Although Adams names FCDC Jailer Rodney Ballard as a defendant, in the narrative statement of his claim, he does not state what actions Jailer Ballard took or any conduct by Jailer Ballard that was negligent or that violated his constitutional rights. In fact, the narrative statement of Adams' claim makes no reference whatsoever to Jailer Ballard in any way.

Thus, it appears that Adams named Jailer Ballard as a defendant due to his supervisory position at the jail. However, it is well settled that *respondeat superior* cannot form the basis of

liability in a § 1983 action. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Okoro v. Scibana*, 63 F. App'x. 182, 184 (6th Cir. 2003). Supervisor liability must be premised on either direct or personal involvement of the named defendant. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989); *Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir.1982). *See also, Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (municipality cannot be held liable under §1983 on a respondeat superior theory). Indeed, the Sixth Circuit has confirmed that to establish any supervisor liability, a plaintiff must allege more than a mere right to control employees and more than negligence; a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct. [*Id*.] *See also, Carrie v. Rios*, 08-CV-13-KKC, 2008 WL 320329 at *2 (E.D. Ky., February 4, 2008) (supervisor must "have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct").

As to FCDC Jailer Ballard, other than naming him in the Complaint, Adams has failed to articulate any facts from the relevant time period to explain how he was directly involved in, encouraged, implicitly authorized, approved, knowingly acquiesced in, or in any way orchestrated the alleged unconstitutional conduct of any offending subordinates. *Hays, supra*. Accordingly, Adams has failed to state a claim against Jailer Ballard for which relief can be granted. Adams' complaint against Jailer Ballard will be dismissed, and Jailer Ballard will be dismissed as a defendant herein.

**2.     U. S. Marshall Service**

Adams also named the U.S. Marshall Service as a defendant. Since this alleged slip-and-fall incident occurred at the FCDC, while Adams was detained there as a pretrial detainee on his pending federal charges, and since there were no U.S. Marshall Service personnel present in the FCDC when

the incident occurred, it is clear that U.S. Marshall Service personnel were not involved in the occurrence of this incident in any way. Adams states that during the course of his attempts to receive medical treatment for his injured tooth, he was told, presumably by FCDC personnel, to contact the U.S. Marshall Service, "since I was a federal inmate in regards to trying to obtain dental treatment." [Complaint: R. 1, p. 4] Adams states that he contacted his attorney in his federal criminal case about this matter and that his counsel filed a motion in that case requesting the Court to order the United States Marshal to arrange dental care and treatment of his broken tooth. [R. 1-1, p. 1]. On April 10, 2013, the Court denied that motion explaining the Court lacked the authority to grant that request.

It is well-settled that liability for violation of a person's civil rights cannot be imposed on any defendant absent that defendant's personal actions; a Plaintiff must describe how each defendant acted, personally, to deprive the Plaintiff of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Nwaebo v. Hawk-Sawyer*, 100 F.App'x. 367, 369 (6th Cir. 2004); *Kesterson v. Federal Bureau of Prisons*, 60 F.App'x. 591, 592 (6th Cir. 2003). Adams' complaint is devoid of any showing that the U.S. Marshall Service had any personal involvement in this incident. The U.S. Marshall Service provides assistance to the Court, among other services, by arresting and transporting defendants to and from jail for court appearances. It is not the function of the U.S. Marshall Service to make arrangements for or provide medical care to a defendant while that defendant is in custody. Further, the U.S. Marshall Service has no authority to do so. Personnel at the facility where the inmate is being confined would be the parties responsible for providing or making arrangements for medical care to an inmate.

Consequently, Adams has failed to state a claim against the U.S. Marshall Service for which relief can be granted. Adams' complaint against the U.S. Marshall Service will be dismissed, and the U.S. Marshall Service will be dismissed from this action.

**3.      Capacity**

Adams does not specify whether he is suing the defendants in their official capacity as government employees or in their individual capacity. When a plaintiff does not allege the capacity in which he is suing the defendants, they are construed as being sued in their official capacity. *Wells v. Brown*, 891 F.2d 591, 593-94 (6th Cir. 1989). If the plaintiff seeks only monetary relief, the defendants are not subject to suit because state officials are not subject to suit for monetary damages in their official capacity under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989).

**a.      Official-capacity claims against all named individual defendants**

The official-capacity claims against all named individual defendants will be dismissed because government officials sued for damages in their official capacities are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't. of State Police, supra*; *Kentucky v. Graham*, 473 U.S. 159, 169(1985). A state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for purposes of a § 1983 claim. *Id.*; *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Therefore, to the extent that Adams is seeking monetary relief from the named individual defendants in their official capacities, these claims will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

b.  **Individual-capacity claims against the defendants**

Out of an abundance of caution to Adams' rights, the court concludes that to the extent that he is seeking monetary damages from the remaining named defendants in their individual capacities, these claims should be permitted to go forward at the present time.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff Charles E. Adams' Complaint against Rodney Ballard, Jailer, Fayette County Detention Center, and the U.S. Marshall Service is **DISMISSED,** pursuant to Fed. R. Civ. P. 12(b)(6), for Plaintiff's failure to state a claim against these defendants.

(2) Rodney Ballard, Jailer, Fayette County Detention Center, and the U.S. Marshall Service are **DISMISSED** from this action.

(3) Plaintiff's claims for monetary relief asserted against the remaining named defendants in their *official* capacities are **DISMISSED WITH PREJUDICE**, and the Clerk of the Court is directed to note the dismissal of these claims as to all individual Defendants in the CM/ECF docket sheet;

(4) Adams' claims for monetary damages from the remaining named defendants in their *individual* capacities shall proceed and the Clerk's Office shall prepare the documents necessary for service of process upon:

    a. Gary Blair, Medical Department, Fayette County Detention Center;

    b. Rosita Rodriguez, Inmate Service Counselor, Fayette County Detention Center;

    c. Robert Simpson, Captain, Fayette County Detention Center.

(5) The Deputy Clerk shall prepare a "Service Packet" consisting of the following documents for service of process upon these defendants:

    a. a completed summons form;
    b. the Complaint [R. 1];
    c. this Order; and
    d. a completed USM Form 285.

(6) The Deputy Clerk shall provide the Service Packet(s) to the United States Marshal's Office ("USMO") in Lexington, Kentucky.

(7) Service of Process upon Defendants Gary Blair, Medical Department, Fayette County Detention Center; Rosita Rodriguez, Inmate Service Counselor, Fayette County Detention Center; and Robert Simpson, Captain, Fayette County Detention Center, shall be conducted by the USMO in Lexington, Kentucky, by serving a Service Packet *personally* upon each of them, through arrangements with the Fayette County Detention Center.

The USMO is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the USMO shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(8) The plaintiff **SHALL**:

    a. Immediately advise the Clerk's Office of any change in his or her current mailing address. **Failure to do so may result in dismissal of this case**.

    b. Communicate with the court *solely* through notices or motions filed with the Clerk's Office. **The court will disregard correspondence sent directly to the judge's chambers.**

9

    c.    In every notice, motion, or paper filed with the court, certify in writing that he or she has mailed a copy to every defendant (or his or her attorney) and state the date of mailing. **The court will disregard any notice or motion which does not include this certification.**

Dated this 28th day of October, 2013.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY